IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
April 13, 2010 Session

## TERRANCE G. MOTLEY v. STATE OF TENNESSEE

Appeal from the Criminal Court for Shelby County
Nos. 00-01715-16    John P. Colton, Jr., Judge

No.  W2009-00991-CCA-R3-PC  - Filed August 11, 2010

A Shelby County jury convicted the Petitioner, Terrance G. Motley, of attempted first degree murder and of being a felon in possession of a handgun, and the trial court sentenced him to forty-four years in prison.  We affirmed the Petitioner's convictions and sentence on direct appeal.  The Petitioner then filed a petition for post-conviction relief, which the post-conviction court denied. The Petitioner now appeals, claiming the post-conviction court erred when it dismissed his petition for post-conviction relief because: (1) he received the ineffective assistance of counsel; and (2) the trial court improperly refused to appoint him another attorney after he waived his right to counsel.  After a thorough review of the record and applicable law, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Claiborne H. Ferguson, Memphis, Tennessee, for the Appellant, Terrance G. Motley.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Lacy Wilber, Assistant Attorney General; William L. Gibbons, District Attorney General; David Zak, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### I.  Facts

## A. Background

On the Petitioner's direct appeal, this Court set forth the following factual summary of the events underlying the Defendant's convictions:

> On April 2, 1998, twenty-nine-year-old Verles Morris was riding his bicycle to a grocery store in his Memphis neighborhood, when the Appellant, speeding down the street in a burgundy Chevrolet sedan, nearly hit him. Upset by the Appellant's action, Morris proceeded up the street to where the Appellant had stopped his vehicle. The Appellant was sitting in the car with a female identified only as Tara. Morris approached the car and knocked on the Appellant's window. The Appellant, after noticing that some of Morris' friends had quickly gathered, tried to hand Morris his jewelry. Morris explained that he had no intention of robbing the Appellant, that he only wanted him to slow down because there were children playing in the street . After this brief discussion, the two men shook hands. With their differences seemingly resolved, Morris rode away on his bike.

> Seconds later, the Appellant, now alone in the car, backed onto the street and accelerated towards Morris. The Appellant slowed as he neared Morris, yelled a slur to get his attention, aimed his handgun at Morris, and "unloaded." Morris, shot first in the hip, was knocked from the bike and fell to the ground. Using the bike as a shield, he attempted to avoid further injury. However, before the Appellant sped away, Morris was shot three more times, resulting in gunshot wounds to the ankle, stomach, and chest. The case remained unsolved for over a year until Morris coincidentally saw the Appellant again at the Shelby County Courthouse in November of 1999. Morris ascertained the Appellant's name from the docket sheet and contacted the police. Morris was subsequently able to identify the Appellant from a photo line-up. Tony Fowler witnessed the shooting and identified the Appellant as the shooter. In addition, police learned that the Appellant's mother owned a burgundy Chevrolet at the time of the shooting, which the Appellant often drove.

*State v. Terrance G. Motley*, W2002-02079-CCA-R3-CD, 2003 WL 22718191, *1-2 (Tenn. Crim. App., at Jackson, Nov. 14, 2003), *perm. app. denied* (Tenn. Mar. 22, 2004).

Before the Petitioner's trial, the Petitioner's brother, Vernon Motley, found Morris, the victim, and drove him to the office of the Petitioner's privately retained attorney. *Id*. Here, the victim gave a notorized statement in which he said the Petitioner was not the man who shot him. *Id*.

After a Shelby County grand jury indicted the Petitioner for attempted first degree murder and possession of a handgun by a convicted felon, the Petitioner's attorney moved to withdraw as counsel based upon the possibility that he could be called as a witness to testify about his interactions with the Petitioner's brother, Vernon Motley. The trial court allowed the Petitioner's attorney to withdraw and offered to appoint a public defender to represent the Petitioner at trial. The Petitioner refused, insisting that he was best able to represent himself and requesting that his trial be held immediately. The trial court explained it would not hold his trial immediately but would delay trial in order to give the Petitioner time to prepare. The Petitioner then executed a written waiver of his right to counsel, which the trial court accepted. The trial court set the Petitioner's trial to begin in nine months. Four months after waiving his right to counsel, however, the Petitioner requested the trial court to appoint counsel to represent him at trial, but the trial court refused, citing the Petitioner's earlier waiver of his right to counsel.

The Petitioner proceeded to trial *pro se*, and a Shelby County jury convicted him of attempted first degree murder and possessing a handgun as a convicted felon. During trial, the victim testified that he gave a statement exculpating the Petitioner to the Petitioner's attorney because he feared Vernon Motley. The jury convicted the Petitioner of attempted first degree murder and of being a felon in possession of a handgun, and the trial court sentenced him to forty-four years. The Petitioner filed a direct appeal, contending he did not knowingly and intelligently waive his right to counsel. This Court held that the Petitioner knowingly and intelligently waived his right to counsel and affirmed his convictions and sentence. *Motley*, 2003 WL 22718191, at *5.

## B. Post-Conviction

The Petitioner filed a petition for post-conviction relief, the trial court appointed counsel, and counsel amended the Petitioner's petition to claim he received the ineffective assistance of counsel and to attack the trial court's refusal to appoint counsel. The post-conviction court held a hearing wherein only the Petitioner testified. The Petitioner testified his trial counsel was ineffective for receiving the victim's statement and, thereby, "conflicting out" of representing the Petitioner. He also said the trial court should have

3

appointed "elbow" counsel to aid him during his pro se representation.[1]

The Petitioner explained that he first retained his trial counsel ("Counsel") in this case to represent him in federal court, where he faced several charges. The Petitioner ran out of funds, however, so he "asked that [Counsel] be recused in order that [the Petitioner] could get someone who [would] work more effectively." The Petitioner then retained Counsel again to represent him when the Petitioner was arrested in this case.

The Petitioner recalled that in 2001, before his trial in this case, the victim went to Counsel's office and gave a written, signed statement recanting his earlier statement to police that the Petitioner was the man who shot him. The trial court then relieved Counsel from representing the Petitioner so that Counsel could testify as a rebuttal witness in the event the victim denied at trial that he gave a conflicting statement to Counsel. The trial court relieved Counsel on a Monday, and the Petitioner moved the next day to re-appoint Counsel, arguing that he hired Counsel only to represent him and not to testify in his case. He argued that, if the trial court did not re-appoint Counsel, it should allow him to proceed pro se to trial that very day, in order to vindicate his right to a speedy trial. The trial court refused to re-appoint Counsel, and it set the Petitioner's trial to begin in nine months. At the conclusion of nine months, the court granted another nine-month continuance, and the trial occurred eighteen months after the trial court relieved Counsel.

The Petitioner represented himself during his trial and sentencing hearing in this case. During his trial, the Petitioner cross-examined the victim, who never denied giving a conflicting statement to Counsel. The Petitioner did not call Counsel as a witness during his trial.

The Petitioner said he was charged with several other crimes unrelated to his conduct in this case, but the trial court refused to allow Counsel to represent him with respect to these charges. Theses charges, however, were eventually dropped. Counsel was appointed to represent the Petitioner during both his motion for new trial and his direct appeal.

The Petitioner said that, because Counsel received the victim's statement and as a result could not represent the Petitioner at trial, the Petitioner did not receive his

---

[1]We have omitted from these facts the testimony presented pertaining to allegations not pursued by the Petitioner on appeal. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Melson*, 772 S.W.2d 417, 419 (Tenn.1989).

constitutional right to the counsel of his choice. The Petitioner also testified that by removing Counsel shortly before trial, the trial court denied the Petitioner of the material Counsel had prepared in anticipation of trial. He also complained that he was denied the right to subpoena witnesses and prepare a defense. The Petitioner reiterated that his intention on the day the trial court accepted his waiver of counsel was either to be represented by Counsel or to proceed to trial that day, pro se. The Petitioner said that, after the trial court removed Counsel from his case, he requested the court reassign Counsel to his case. The Petitioner did not remember the date on which he made this request.

On cross-examination, the Petitioner acknowledged that, on the day the trial court accepted his waiver of counsel, he told the trial court he was prepared and capable of representing himself at trial. The State read aloud the following portion of the hearing during which the Petitioner waived his right to counsel:

> . . . I feel I am ready to represent myself. I have studied the law and I have studied the facts of my case. I have not just studied discovery evidence. I just got my indictments, which I-the factual issues of my case I've been studying, Tennessee rules of law, Tennessee rules of criminal procedure. I'm familiar with a trial and the rules of trial and rules of evidence.

The Petitioner denied that he instructed his brother to drive the victim to Counsel and induce him to make a statement denying his earlier identification of the Petitioner as his assailant. The Petitioner denied he was a gang member. He also denied that Counsel was removed so that, if the victim identified the Petitioner at trial, Counsel could testify that the victim recanted his testimony only in response to threats from the Petitioner's brother.

The post-conviction court took the petition under advisement and later issued a written order denying relief. It is from this judgment that the Petitioner now appeals.

## II. Analysis

The Petitioner contends that he received the ineffective assistance of counsel at trial and that the trial court improperly refused to appoint counsel after the Petitioner attempted to withdraw his request to represent himself at trial. The State responds, first, that this Court disposed of the issues raised herein on direct appeal when it held that the Petitioner knowingly and voluntarily waived his right to counsel. Further, the State argues, the

5

Petitioner fails to demonstrate that trial counsel's actions constituted ineffective assistance.

## A. Waiver of Right to Counsel

As the State correctly notes, this Court held on appeal that the Petitioner knowingly and intelligently waived his right to counsel:

> Although not asking the exact litany of questions suggested, this failure does not necessarily preclude a constitutionally valid waiver. *Luther E. Fowler v. State*, No. 03C01-9711-CR-00509 (Tenn. Crim. App. at Knoxville, July 30, 1999). The questions identified were not specifically utilized by the trial court in making a determination on the issue of waiver of counsel, but there was, in our view, substantial compliance. The court examined the Appellant's background and education, and considered the fact that he had been studying the rules of evidence and criminal procedure for many months. The trial court made numerous references to the fact that the Appellant was charged with an A felony and faced great exposure to prison time. The court advised the Appellant that he would not be given special treatment during the trial, making it clear that he would be subject to the same standards as an attorney. The Appellant was clear and unequivocal as to the fact that he wanted to proceed pro se and that he was capable of representing himself. Indeed, he informed the trial court that he had already determined the best defense available in the case. Regardless, the trial court made clear that, in its view, the Appellant was unwise to continue with self-representation. We conclude that the trial adequately ascertained that the Appellant's waiver of his right to counsel was made knowingly and intelligently.

*See Motley*, 2003 WL 22718191, at *5. Having determined that the trial court examined the Petitioner's background, considered the Petitioner's professed familiarity with criminal law and procedure, and advised the Petitioner of the perils of proceeding pro se, we concluded the Petitioner's waiver was constitutionally valid. *Id*. Because a panel of this Court has already addressed the Petitioner's waiver of counsel, we will revisit neither the Petitioner's waiver of counsel nor the trial court's subsequent refusal to re-appoint counsel. We will address only the Petitioner's claim that he received the ineffective assistance of counsel.

## B. Ineffective Assistance of Counsel

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2006). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). Upon review, when post-conviction proceedings have included a full evidentiary hearing, as was true in this case, the trial judge's findings of fact and conclusions of law are given the effect and weight of a jury verdict, and this Court is "bound by the trial judge's findings of fact unless we conclude that the evidence contained in the record preponderates against the judgment entered in the cause." *Black v. State*, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). Thus, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial court judge, not the appellate courts. *Momon v. State,* 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State,* 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's conclusions of law, however, are subject to a purely de novo review by this Court, with no presumption of correctness. *Fields v. State,* 40 S.W.3d 450, 457 (Tenn. 2001).

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine

7

whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Strickland*, 466 U.S. at 688).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland,* 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. *Strickland*, 466 U.S. at 690; *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. *House*, 44 S.W.3d at 515 (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)). However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. *House*, 44 S.W.3d at 515.

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

The post-conviction court in this case issued a written order denying the Petitioner relief. In this order, the post-conviction court made several findings of fact: Finding that

Counsel withdrew because the victim testified he made the recantation to Counsel in fear of the Petitioner's brother, the trial court found that the Petitioner failed to show Counsel was deficient by "actively represent[ing] a conflicting interest." Indeed, this Court in its opinion on direct appeal noted that the victim's recantation statement was made after the Petitioner's brother found the victim on the street and drove the victim to Counsel's office. *Motley*, 2003 WL 22718191, at *2. The Petitioner himself, although denying direct involvement, confirmed that his brother brought the victim to Counsel's office in order to make a statement exculpating the Petitioner. The evidence does not, therefore, preponderate against the post-conviction court's factual finding that Counsel withdrew because of the possibility he would be called to testify about the victim's recantation of his earlier identification of the Petitioner. *See Black*, 794 S.W.2d at 755.

Further, we find that Counsel's performance in this case did not fall below an objective standard of reasonableness. As the Petitioner points out, the ABA Standards of Criminal Justice advise criminal defense attorneys against interviewing a prospective witness except in the presence of a third party. 4-4.3(e) (3d ed. 1993). The circumstances in this case, however, suggest that the victim's statement to Counsel was a surprise event for which Counsel was unprepared. The testimony at the Petitioner's trial established that the Petitioner's brother approached the victim and, under threat of force, induced the victim to accompany him to Counsel's office in order to give a statement. This spontaneous interview presented Counsel with little ability to acquire additional witnesses to the statement. Counsel recorded the interview in lieu of having a third party present. Counsel's involvement eventually led to the trial court relieving Counsel from representing the Petitioner. We conclude that, under the circumstances, Counsel's decision to interview the victim and record his statement fell within the "wide range of reasonable professional assistance." *See Strickland*, 466 U.S. at 690*; Burns*, 6 S.W.3d at 462. Thus, Counsel was not ineffective for interviewing the victim.

We further note that the Petitioner's argument would fail even were he to prove the unreasonableness of Counsel's conduct because the Petitioner cannot show that Counsel's conduct prejudiced him. After Counsel interviewed the victim, and the victim testified that the statement he gave Counsel was the result of coercion from the Petitioner's brother, the trial court relieved Counsel of his representation of the Petitioner. The ABA Standards of Criminal Justice recommend just such a solution to an attorney's participation in a witness pre-trial interview. *See* ABA Standards of Criminal Justice 4-4.3(e) (stating that an attorney should refrain from interviewing a prospective witness unless he is prepared to withdraw from representation). The Petitioner fails to demonstrate that, but for Counsel's withdrawal, the result of his trial would have been different. *See Strickland,* 466 U.S. at 694. As discussed above, the trial court offered to appoint a public defender to represent the

9

Petitioner, and, when the Petitioner insisted on proceeding pro se, the trial court gave the Petitioner ample time to prepare for trial. Thus, the Petitioner cannot demonstrate prejudice from Counsel's conduct. We conclude the post-conviction court properly dismissed the Petitioner's petition for post-conviction relief based upon his claim he received the ineffective assistance of counsel. He is not entitled to relief on this issue.

## III. Conclusion

After a through review of the record and applicable law, we conclude the post-conviction court properly dismissed the Petitioner's petition for post-conviction relief. As such, we affirm the post-conviction court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE